UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X          **Case No.**

CRYSTAL GAYLE,

                                   *Plaintiff,*                          **COMPLAINT**

                    -*against*-

                                                                        **PLAINTIFF DEMANDS**
                                                                        **A TRIAL BY JURY**

ITALIAN AMERICAN CIVIL RIGHTS LEAGUE, INC.,
DURACELL GREGORY, *In His Individual Capacity,*
VICKI CUSARE, *In Her Individual Capacity,*

                                   *Defendants.*
-------------------------------------------------------------X

Plaintiff, CRYSTAL GAYLE, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys

at Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1.  Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, *42
    U.S.C.* §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of
    1991, Pub. L. No. 102-166) ("Title VII"), and the New York State Human Rights Law,
    New York State Executive Law §296, et. seq. ("NYSHRL"), the New York City Human
    Rights Law, New York City Administrative Code § 8-107, et seq. ("NYCHRL") and
    seeks damages to redress the injuries Plaintiff has suffered as a result of being
    **discriminated against and sexually harassed** on the basis of her gender and then she
    was **retaliated against** by her employer for complaining of discrimination.

2.  Plaintiff, who is an African American female, was employed by DEFENDANT
    ITALIAN AMERICAN CIVIL RIGHTS LEAGUE **(hereinafter "IACRL")** as a
    Monitor.

3.  Upon being hired at IACRL, PLAINTIFF was subjected to an ongoing and continuous

pattern of sexual harassment, sexual comments and a sexually hostile work environment by her supervisor and Human Resources Director DURACELL GREGORY.

4. Among other things, DEFENDANT GREGORY told PLAINTIFF that: [1] he wanted to be a "*stepfather to [her] children*," [2] he was looking for a "*new love*;" [3] he wanted PLAINTIFF to refer to him as "*big daddy*;" as well as other inappropriate comments. On several occasions, DEFENDANT GREGORY referred to himself as "*big daddy*" while asking PLAINTIFF to refer to him by the same name.

5. To PLAINTIFF'S dismay, DEFENDANT GREGORY often spoke with other employees about PLAINTIFF and lead them to believe that PLAINTIFF and GREGORY were engaged in some sort of personal relationship.

6. Defendant GREGORY also embarrassed/humiliated PLAINTIFF by showing her photographs of women's buttocks, while comparing same to PLAINTIFF'S – in the presence of other employees – as he made statements such as "*look at that ass and look at yours*."

7. One day after DEFENDANT GREGORY'S sexual harassment drove PLAINTIFF to tears, PLAINTIFF complained to the Executive Director or IACRL, DEFENDANT CUSARE. PLAINTIFF also provided the names of other employees, who witnessed DEFENDANT GREGORY'S wrongful conduct.

8. After taking PLAINTIFF'S complaint and confirming the sexual harassment with PLAINTIFF'S coworkers/witnesses, DEFENDANT CUSARE represented that DEFENDANT GREGORY would be terminated. However, PLAINTIFF and her coworker employee/witnesses were immediately terminated in retaliation for making or supporting PLAINTIFF'S complaint. Meanwhile, DEFENDANT GREGORY maintains his employment at IACRL as its Human Resources Director.

9. Plaintiff brings this action charging that Defendants, collectively and/or individually, subjected Plaintiff to an ongoing and continuous hostile working environment, discrimination, retaliation and sexual harassment on the basis of her gender and/or sex.

## JURISDICTION AND VENUE

10. Jurisdiction of this Court is proper under *42 U.S.C.* §2000e-5(f)(3), and 28 U.S.C. §§1331 and 1343.

11. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to *28 U.S.C.* §1367.

12. Venue is proper in the Eastern District of New York pursuant to *28 U.S.C.* §1391(b), as the acts complained of occurred therein.

## PROCEDURAL PREREQUISITES

13. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

14. Plaintiff received a Notice of Right to Sue from the EEOC, dated 9/28/2017, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto as *Exhibit A.*

15. This Action is being timely commenced within ninety (90) days of receipt of said Right to Sue.

## PARTIES

16. Plaintiff CRYSTAL GAYLE ("MS. GAYLE" and/or Plaintiff) is an African American female, who is a single mother of two young children. At all times relevant to the Complaint, PLAINTIFF was employed by DEFENDANT ITALIAN AMERICAN CIVIL RIGHTS LEAGUE as a Monitor and/or After School Counselor with an hourly wage of $14 per hour.

17. That at all times relevant hereto, Defendant ITALIAN AMERICAN CIVIL RIGHTS LEAGUE **(hereinafter "IACRL")** is a non-profit community-based organization which offers a variety of services to the community, including school based programs, social service referrals and youth educational/employment services. Upon information and belief, IACRL'S headquarters is located at 1460 Pennsylvania Avenue, Suite 1B, Brooklyn, NY 11239.

18. Upon information and belief, Defendant DURACELL GREGORY ("Defendant GREGORY") is an African American Male, who is a member of the administrative staff and serves as Human Resources Director at IACRL. At all times relevant, DEFENDANT GREGORY had the ability to affect the terms and conditions of Plaintiff's employment.

19. Upon information and belief, Defendant VICKI CUSARE ("Defendant CUSARE") is the Executive Director and/or a member of the administrative staff at IACRL. At all times relevant, DEFENDANT CUSARE had the ability to affect the terms and conditions of Plaintiff's employment and had supervisory authority over DEFENDANT GREGORY.

## FACTUAL ALLEGATIONS

20. On or about April 2016 PLAINTIFF GAYLE began working for IACRL as a Monitor for its Summer Youth Employment Program ("SYEP"). Plaintiff had also applied, and was hired for, the position of Afterschool Monitor. Plaintiff was earning $14 per hour.

21. At the time of PLAINTIFF'S hire, PLAINTIFF was told (by DEFENDANT GREGORY) and, had the understanding that, she would work as a Monitor during the SYEP and then she would continue to work during the regular school year as an After-School Program Monitor.

22. In or around beginning of June 2016 PLAINTIFF started being harassed by DEFENDANT GREGORY through phone calls and text messages.

4

23. On June 8, 2016, DEFENDANT GREGORY sent PLAINTIFF a text message at 10:36 p.m., well after work hours.

24. PLAINTIFF did not immediately respond to the message. However, when she did respond, she advised DEFENDANT GREGORY that she was *"sorry, getting [her] kids together for bed, as well as [herself]."*

25. DEFENDANT GREGORY replied, *"**It's no problem; I'm looking for a new love anyway but is [sic] nothing to worry about**."*

26. PLAINTIFF avoided the comment and told DEFENDANT GREGORY that she would be at work the next day.

27. DEFENDANT GREGORY began frequently calling and texting PLAINTIFF after the business day was finished.

28. DEFENDANT GREGORY also began asking PLAINTIFF to meet him in his office after 5 p.m.

29. PLAINTIFF found DEFENDANT GREGORY'S requests awkward.

30. On one occasion when PLAINTIFF went to DEFENDANT GREGORY'S office after 5 p.m., DEFENDANT GREGORY told PLAINTIFF that he *"**would be a great step father to [PLAINTIFF'S] kids**,"* among other things. DEFENDANT GREGORY suggested that he would be a great stepdad to PLAINTIFF'S children on numerous occasions.

31. In the days/weeks following, PLAINTIFF began to hear from her coworkers that DEFENDANT GREGORY was talking about PLAINTIFF and giving her coworkers an impression that PLAINTIFF and DEFENDANT GREGORY were in some form of personal relationship.

32. DEFENDANT GREGORY was beginning to make PLAINTIFF'S work environment uncomfortable as rumors were being spread throughout the workplace based on DEFENDANT GREGORY'S actions and statements.

33. DEFENDANT GREGORY often walked around the workplace bragging that he is "HR" and if the employees wanted their jobs, they would have "*to play by his rules or their asses would be out the door.*"

34. Given DEFENDANT GREGORY'S actions and comments (discussed further below), PLAINTIFF and her coworkers became intimidated by DEFENDANT GREGORY.

35. The week of July 5, 2016 DEFENDANT GREGORY began to make PLAINTIFF uncomfortable when he began to call PLAINTIFF after work hours.

36. Among other things during these calls, DEFENDANT GREGORY would say things to PLAINTIFF such as, "*you haven't been paying big daddy any attention lately it seems as if all your attention is all on Layton.*" "Layton" was one of PLAINTIFF coworkers.

37. DEFENDANT GREGORY also sent PLAINTIFF text messages wherein he would make inappropriate comments about: [1] PLAINTIFF'S body, [2] being a stepfather to PLAINTIFF'S sons, and [3] his assumption the PLAINTIFF was involved in sexual relationships with her coworkers.

38. Shocked, frustrated and fearful because of DEFENDANT GREGORY'S inappropriate after-hour phone calls, PLAINTIFF began secretly calling her coworkers on three-way so that they could hear what DEFENDANT GREGORY would say to PLAINTIFF.

39. Indeed, PLAINTIFF'S co-workers, who overheard DEFENDANT GREGORY'S conversations with PLAINTIFF became fearful and believed that DEFENDANT GREGORY would retaliate against them for being friends with PLAINTIFF.

40. On one occasion in July 2016, PLAINTIFF walked into the office on a Monday and DEFENDANT GREGORY, who was talking to a coworker named "Nicole" at the time, commented to PLAINTIFF that he saw PLAINTIFF over the weekend. PLAINTIFF was puzzled by the comment because she did not go out that weekend.

41. DEFENDANT GREGORY then told Nicole to "show [PLAINTIFF] the picture" that was on Nicole's phone at the time. When PLAINTIFF looked at the picture, PLAINTIFF saw a girl in a thong bathing suit with a big behind. The person in the photograph was not PLAINTIFF.

42. Confused, PLAINTIFF asked DEFENDANT GREGORY why he believed that was a photograph of PLAINTIFF. DEFENDANT GREGORY responded, "*look at that ass and look at yours.*"

43. PLAINTIFF immediately became upset. Visually agitated, PLAINTIFF asked DEFENDANT GREGORY why, out of all the females in the office, would he say that the girl in the photograph was she?

44. PLAINTIFF'S distress at this comment became a joking matter to DEFENDANT GREGORY.

45. DEFENDANT GREGORY stood in the doorway and as PLAINTIFF was trying to get past him, he then held out his arms and told PLAINTIFF to "*give [him] a hug.*"

46. Disgusted, PLAINTIFF refused to walk near DEFENDANT GREGORY. Instead, she went back to her seat and sat down until DEFENDANT GREGORY moved from the doorway.

47. In or around this same time, PLAINTIFF (as well as other witnesses/employees) heard DEFENDANT GREGORY tell another employee named "Kim" that "*then reason [she] did not have children was because she 'swallowed' them all.*"

48. PLAINTIFF, as well as the other employees that stood around and overheard the comment, were shocked.

49. On July 25th. DEFENDANT GREGORY called PLAINTIFF into his office to give PLAINTIFF her paycheck.

50. When PLAINTIFF reached for the check, DEFENDANT GREGORY pulled it and back and said, "*I thought you would call me and say, 'bring it to me big daddy'.*"

51. PLAINTIFF was extremely uncomfortable and felt humiliated. She left DEFENDANT GREGORY'S office in tears.

52. PLAINTIFF became depressed at the job and her enthusiasm for the job began to dwindle based on the ongoing and continuous sexual harassment and hostile work environment by DEFENDANT GREGORY.

53. Indeed, PLAINTIFF did not want to return to work at IACRL, but did so because she had to support her children/family.

54. Two of PLAINTIFF'S coworkers, "Solomon" and "Layton," were upset by the ongoing sexual harassment and hostile work environment, to which PLAINTIFF was being subjected, and told [PLAINTIFF] to speak to the Director, DEFENDANT VICKI CUSARE.

55. DEFENDANT VICKI CUSARE was not in the office that day and so PLAINTIFF complained to a supervisor named "Dorian," who told PLAINTIFF to write a statement and that she would give it to DEFENDANT CUSARE.

56. Shortly thereafter, PLAINTIFF received a call from DEFENDANT VICKI CUSARE, who told PLAINTIFF to meet her – off IACRL property - at a diner on Ralph Avenue and Avenue M in Brooklyn.

57. During this meeting, DEFENDANT CUSARE told PLAINTIFF that she was so sorry and that she would investigate the matter. DEFENDANT CUSARE also told PLAINTIFF that she could stay home during the investigation.

58. DEFENDANT CUSARE assured PLAINTIFF that here would be no retaliation against her for making the complaint.

59. However, DEFENDANT CUSARE'S assurances to PLAINTIFF later proved to be false.

60. During the interview with DEFENDANT CUSARE, PLAINTIFF answered a series of questions and also provided the names of all of the witnesses, who knew and witnessed what PLAINTIFF was experiencing.

61. DEFENDANT CUSARE then asked PLAINTIFF'S co-workers about PLAINTIFF'S sexual harassment complaint. PLAINTIFF'S coworkers confirmed PLAINTIFF'S account of the sexually hostile work environment PLAINTIFF faced under DEFENDANT GREGORY.

62. DEFENDANTS acted as though, and represented to PLAINTIFF that, DEFENDANT GREGORY would be terminated.

63. Upon information and belief, according to some of PLAINTIFF'S coworkers, there was more than one instance in the past when DEFENDANT GREGORY was accused of inappropriate conduct in the workplace and DEFENDANTS pretended to fire him, and then brought him back to work after terminating the complainants.

64. DEFENDANTS repeated the same above-described pattern with regard to PLAINTIFF.

65. When PLAINTIFF went to pick up her paycheck on August 11, 2017, all of a sudden, PLAINTIFF was told not to return to work.

66. DEFENDANTS told PLAINTIFF that they did not need her for the afterschool program or as a monitor for the following summer and that her employment at IACRL was ending.

67. DEFENDANTS terminated PLAINTIFF shortly after she complained about DEFENDANT GREGORY'S sexual harassment and the hostile work environment that he created.

68. Awkwardly, PLAINTIFF was told that – all of a sudden – all of the afterschool monitor positions were filled.

69. This was contrary to what DEFENDANT GREGORY told PLAINTIFF when she was hired – that she would work as a monitor during the SYEP program and then she would continue to work during the regular school year as an afterschool program monitor.

70. PLAINTIFF'S employment was immediately discontinued in retaliation for engaging in protected activity and/or for complaining about DEFENDANT GREGORY.

71. DEFENDANTS had no valid business justification for terminating PLAINTIFF.

72. Following PLAINTIFF'S termination, DEFENDANTS then began to plot the return of DEFENDANT GREGORY to work, as well as plot the termination(s) of the people that supported, and/or were witnesses to, PLAINTIFF'S sexual harassment complaint.

73. PLAINTIFF'S ex-coworkers, "Layton," "Paschal" and "Solomon" – who were witnesses to PLAINTIFF'S sexual harassment by DEFENDANT GREGORY – were subjected to retaliation.

74. Upon information, DEFENDANT GREGORY instructed one of the above-mentioned employees ("Layton") to call PLAINTIFF and try to get PLAINTIFF to drop her sexual harassment complaint.

75. Specifically, DEFENDANT GREGORY asked "Layton" to convince PLAINTIFF to call the office to say that she lied about her sexual harassment complaint against DEFENDANT GREGORY because she was angry about a paycheck error situation, which occurred while PLAINTIFF was employed at IACRL.

76. Upon information and belief, DEFENDANTS and/or DEFENDANT GREGORY wanted "Layton" to record the conversation with PLAINTIFF.

77. Shocked by the request, and unwilling to assist DEFENDANTS with their scheme, the "Layton" told DEFENDANTS that PLAINTIFF changed her number and that he could not get in contact with her.

78. A few weeks later, PLAINTIFF was informed that DEFENDANT GREGORY was back at work.

79. Also, in stark contrast to DEFENDANTS' claim that the afterschool monitor positions were filled, DEFENDANTS hired new monitors for the afterschool program.

80. Upon his return, DEFENDANT GREGORY immediately began telling "Layton" to start applying for other jobs – in retaliation for "Layton's" refusal to assist DEFENDANT GREGORY.

81. Approximately a week later, "Layton" (who witnessed and supported PLAINTIFF'S Sexual harassment complaint against DEFENDANT GREGORY) was terminated – much like PLAINTIFF.

82. As of the date of this Complaint, DEFENDANT GREGORY is still employed at IACRL as an active member of the human resources and/or the administrative staff. Meanwhile, PLAINTIFF (as well as other employees) was wrongfully terminated and forced to seek other employment.

83. DEFENDANTS IACRL, CUSARE supported, condoned and ratified the sexual harassment, hostile work environment, retaliation, and other wrongful conduct taken against PLAINTIFF (and the other employees mentioned herein).

84. DEFENDANTS IACRL, CUSARE protected the harasser, DEFENDANT GREGORY, while retaliating against PLAINTIFF (and the other employees mentioned herein).

85. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

86. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary/pay, special damages, benefits and other compensation, which such employment entails, and PLAINTIFF has also suffered future pecuniary losses,

emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

87. COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

88. As such, PLAINTIFF demands Punitive Damages as against all Defendants, jointly and severally.

**AS A *FIRST* CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
***(Against Defendant IACRL)***

89. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

90. This claim is authorized and instituted pursuant to the provisions of <u>Title VII of the Civil Rights Act of 1964, 42 U.S.C.</u> Section(s) 2000e *et seq.*, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender.

91. Defendants engaged in unlawful employment practices prohibited by <u>42 U.S.C.</u> §2000e *et seq.*, by discriminating against Plaintiff because of her sex/gender.

92. DEFENDANT GREGORY utilized his position/stature as a manager, and/or Human Resources representative, to subject PLAINTIFF, who was a newly-hired employee, to, *inter alia,* sexual harassment in that DEFENDANT GREGORY subjected PLAINTIFF to unwanted sexual comments, flirting, late-night phone calls and otherwise an uncomfortable sexually hostile work environment.

93. DEFENDANT GREGORY was also in the presence of other employees when improper sexually harassing comments and/or statements were made to and about PLAINTIFF.

94. Despite his knowledge (especially as the Human Resources Director) that said statements/comments were improper at the workplace and violated IACRL'S policy against discrimination, as well as Federal, State and City laws, DEFENDANT GREGORY continued to violate PLAINTIFF'S rights.

95. PLAINTIFF'S work environment was hostile under DEFENDANT GREGORY and was permeated with sexually harassive comments, ridicule, humiliation, rumors and conduct that made PLAINTIFF'S environment intolerable.

96. When PLAINTIFF complained to management, including Executive Director DEFENDANT CUSARE, about DEFENDANT GREGORY'S actions, PLAINTIFF'S employment was terminated shortly thereafter.

97. In addition, the employees, who served as witnesses for PLAINTIFF against DEFENDANT GREGORY, were being coerced to assist IACRL, CUSARE and GREGORY in stymieing PLAINTIFF'S complaint. Moreover, these employees were later terminated as well for refusing to assist DEFENDANTS.

98. Meanwhile, DEFENDANT GREGORY maintains his employment at IACRL as a Human Resources Director.

99. DEFENDANTS had no valid business justification for their actions against PLAINTIFF and her coworkers.

100. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

101. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, special damages, loss of benefits, inconvenience and other compensation, which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and

other non-pecuniary losses.

102. COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

## AS A *SECOND* CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
### (*Against Defendant IACRL*)

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

104. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

105. Plaintiff was retaliated against by COLLECTIVE DEFENDANTS for engaging in protected activity.

106. PLAINTIFF complained to Individual Defendant CUSARE about the sexual harassment that she faced on a daily basis.

107. PLAINTIFF provided CUSARE and IACRL with the names of witnesses, who could support her complaint.

108. Following PLAINTIFF'S complaints, PLAINTIFF was immediately terminated by CUSARE and IACRL and the individuals that supported her complaint were coerced and terminated as well.

109. Further, DEFENDANT GREGORY'S employment was not threatened or harmed.

110. DEFENDANTS had no valid business justification for the retaliatory and abusive actions

taken against PLAINTIFF (and others) following her engagement in protected activity.

111. COLLECTIVE DEFENDANTS placed PLAINTIFF in an awkward, hostile and uncomfortable employment position as the victim or sexual harassment and as a complainant.

112. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

113. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary/pay, benefits, special damages and other compensation, which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

114. COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

## AS A *THIRD* CAUSE OF ACTION FOR DISCRIMINATION
## UNDER NEW YORK STATE EXECUTIVE LAW
### (*Against Defendant IACRL*)

115. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

116. New York State Executive Law §296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's . . . sex, disability . . . familial status ... to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

117. Defendants have engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her gender/sex.

118. DEFENDANT GREGORY utilized his position/stature as a manager, and/or Human

Resources representative, to subject PLAINTIFF, who was a newly-hired employee, to, *inter alia,* sexual harassment in that DEFENDANT GREGORY subjected PLAINTIFF to unwanted sexual comments, flirting, late-night phone calls/texts and otherwise an uncomfortable sexually hostile work environment.

119. DEFENDANT GREGORY was also in the presence of other employees when improper sexually harassing comments and/or statements were made to and about PLAINTIFF.

120. Despite his knowledge (especially as the Human Resources Director) that said statements/comments were improper at the workplace and violated IACRL'S policy against discrimination, as well as Federal, State and City laws, DEFENDANT GREGORY continued to violate PLAINTIFF'S rights.

121. PLAINTIFF'S work environment was hostile under DEFENDANT GREGORY and was permeated with sexually harassive comments, ridicule, rumors and conduct that made PLAINTIFF'S environment intolerable.

122. When PLAINTIFF complained to management, including Executive Director DEFENDANT CUSARE, about DEFENDANT GREGORY'S actions, PLAINTIFF'S employment was terminated shortly thereafter.

123. In addition, the employees, who served as witnesses for PLAINTIFF against DEFENDANT GREGORY, were being coerced to assist IACRL, CUSARE and GREGORY in stymieing PLAINTIFF'S complaint. In addition, these employees were later terminated as well for refusing to assist DEFENDANTS.

124. Meanwhile, DEFENDANT GREGORY maintains his employment at IACRL as a Human Resources Director.

125. DEFENDANTS had no valid business justification for their actions against PLAINTIFF and her coworkers.

126. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

127. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, special damages, loss of benefits, inconvenience and other compensation, which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

128. COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

### AS A *FOURTH* CAUSE OF ACTION FOR RETALIATION UNDER NEW YORK STATE EXECUTIVE LAW
### *(Against Defendant IACRL)*

129. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

130. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

131. Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

132. Plaintiff was retaliated against by COLLECTIVE DEFENDANTS for engaging in protected activity.

133. Plaintiff was retaliated against by COLLECTIVE DEFENDANTS for engaging in protected activity.

134. PLAINTIFF complained to Individual Defendant CUSARE about the sexual harassment that she faced on a daily basis.

135. PLAINTIFF provided CUSARE and IACRL with the names of witnesses, who could support her complaint.

136. Following PLAINTIFF'S complaints, PLAINTIFF was immediately terminated by CUSARE and IACRL and the individuals that supported her complaint were coerced and terminated as well.

137. Further, DEFENDANT GREGORY'S employment was not threatened or harmed.

138. DEFENDANTS had no valid business justification for the retaliatory and abusive actions taken against PLAINTIFF (and others) following her engagement in protected activity.

139. COLLECTIVE DEFENDANTS placed PLAINTIFF in an awkward, hostile and uncomfortable employment position as the victim or sexual harassment and as a complainant.

140. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

141. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary/pay, benefits, special damages and other compensation, which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

142. COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER NEW YORK STATE EXECUTIVE LAW - *AIDER AND ABETTOR LIABILITY*
### *(As and Against Individual Defendants GREGORY and CUSARE)*

143.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

144.  New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to **aid, abet**, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

145.  Individual Defendants GREGORY and CUSARE engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory and retaliatory conduct.

146.  Individual Defendants GREGORY and CUSARE, as members administration for IACRL, are liable for aiding and abetting IACRL in the discrimination and wrongful retaliation faced by PLAINTIFF – as well as her coworker witnesses.

147.  Defendant GREGORY utilized his management status/position to subject PLAINTIFF to sexual harassment and a hostile working environment as outlined above.

148.  Defendant GREGORY exposed PLAINTIFF to a hostile work environment that was permeated with discriminatory animus, ridicule, unwanted sexual talk, sexual staring, humiliation, gross negligence, intimidation, and unwanted late-night communications – all in furtherance of his intent to sexually harass PLAINTIFF.

149.  DEFENDANT CUSARE was made aware of the sexual harassment that PLAINTIFF was experiencing at IACRL. DEFENDANT CUSARE had the ability, power, authority, apparent authority, and means to take PLAINTIFF's complaint and address same, or to advance said complaints to the proper individuals to address same.

150.  DEFENDANT CUSARE refused to take PLAINTIFF's complaint, or to take her

19

concerns seriously. Instead, she allowed the sexually hostile work environment to continue against PLAINTIFF and others.

151. Then CUSARE was directly involved in the decision to terminate PLAINTIFF in retaliation for her complaints, while plotting to save DEFENDANT GREGORY'S employment at IACRL.

152. Defendants GREGORY and CUSARE, who are members of administration at Defendant IACRL, with knowledge of its policies, knew or should have known that their collective and individual actions violated the company's policies and rules, as well as PLAINTIFF individual rights.

153. As a result of INDIVIDUAL DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

154. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary/pay, benefits, special damages and other compensation, which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

155. DEFENDANTS GREGORY'S and CUSARE'S conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

## AS AN *SIXTH* CAUSE OF ACTION
## DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE / NYC HUMAN RIGHTS LAW

156. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

157. The New York City Administrative Code § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof,

because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

158. DEFENDANT GREGORY utilized his position/stature as a manager, and/or Human Resources representative, to subject PLAINTIFF, who was a newly-hired employee, to, *inter alia*, sexual harassment in that DEFENDANT GREGORY subjected PLAINTIFF to unwanted sexual comments, flirting, late-night phone calls and otherwise an uncomfortable sexually hostile work environment.

159. DEFENDANT GREGORY was also in the presence of other employees when improper sexually harassing comments and/or statements were made to and about PLAINTIFF.

160. Despite his knowledge (especially as the Human Resources Director) that said statements/comments were improper at the workplace and violated IACRL'S policy against discrimination, as well as Federal, State and City laws, DEFENDANT GREGORY continued to violate PLAINTIFF'S rights.

161. PLAINTIFF'S work environment was hostile under DEFENDANT GREGORY and was permeated with sexually harassive comments, ridicule, humiliation, rumors and conduct that made PLAINTIFF'S environment intolerable.

162. When PLAINTIFF complained to management, including Executive Director DEFENDANT CUSARE, about DEFENDANT GREGORY'S actions, PLAINTIFF'S employment was terminated shortly thereafter.

163. In addition, the employees, who served as witnesses for PLAINTIFF against DEFENDANT GREGORY, were being coerced to assist IACRL, CUSARE and

GREGORY in stymieing PLAINTIFF'S complaint. Moreover, these employees were later terminated as well for refusing to assist DEFENDANTS.

164. Meanwhile, DEFENDANT GREGORY maintains his employment at IACRL as a Human Resources Director.

165. DEFENDANTS had no valid business justification for their actions against PLAINTIFF and her coworkers.

166. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

167. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

168. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, special damages, loss of benefits, inconvenience and other compensation, which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

169. COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

**AS A *SEVENTH* CAUSE OF ACTION FOR RETALIATION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**NEW YORK CITY HUMAN RIGHTS LAW ("NYCHRL")**

170. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

171. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

22

172. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

173. Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

174. COLLECTIVE DEFENDANTS retaliated against plaintiff for engaging in protected activity.

175. COLLECTIVE DEFENDANTS retaliated against plaintiff for engaging in protected activity.

176. COLLECTIVE DEFENDANTS retaliated against plaintiff for engaging in protected activity.

177. PLAINTIFF complained to Individual Defendant CUSARE about the sexual harassment that she faced on a daily basis.

178. PLAINTIFF provided CUSARE and IACRL with the names of witnesses, who could support her complaint.

179. Following PLAINTIFF'S complaints, PLAINTIFF was immediately terminated by CUSARE and IACRL and the individuals that supported her complaint were coerced and terminated as well.

180. Further, DEFENDANT GREGORY'S employment was not threatened or harmed.

181. DEFENDANTS had no valid business justification for the retaliatory and abusive actions taken against PLAINTIFF (and others) following her engagement in protected activity.

182. COLLECTIVE DEFENDANTS placed PLAINTIFF in an awkward, hostile and uncomfortable employment position as the victim or sexual harassment and as a

complainant.

183. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

184. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary/pay, benefits, special damages and other compensation, which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

185. COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

## AS A *EIGTH* CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYCHRL
### (As for Individual Defendants GREGORY and CUSARE)

186. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

187. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

188. Individual Defendants GREGORY and CUSARE, as members administration for IACRL, are liable for aiding and abetting IACRL in the discrimination and wrongful retaliation faced by PLAINTIFF – as well as her coworker witnesses.

189. Defendant GREGORY utilized his management status/position to subject PLAINTIFF to sexual harassment and a hostile working environment as outlined above.

190. Defendant GREGORY exposed PLAINTIFF to a hostile work environment that was permeated with discriminatory animus, ridicule, unwanted sexual talk, sexual staring,

24

humiliation, gross negligence, intimidation, and unwanted late-night communications –
all in furtherance of his intent to sexually harass PLAINTIFF.

191.    DEFENDANT CUSARE was made aware of the sexual harassment that PLAINTIFF was
experiencing at IACRL. DEFENDANT CUSARE had the ability, power, authority,
apparent authority, and means to take PLAINTIFF'S complaint and address same, or to
advance said complaints to the proper individuals to address it.

192.    DEFENDANT CUSARE refused to take PLAINTIFF'S complaint, or to take her
concerns seriously. Instead, she allowed the sexually hostile work environment to
continue against PLAINTIFF and others.

193.    Then CUSARE was directly involved in the decision to terminate PLAINTIFF in
retaliation for her complaints, while plotting to save DEFENDANT GREGORY'S
employment at IACRL.

194.    Defendants GREGORY and CUSARE, who are members of administration at Defendant
IACRL, with knowledge of its policies, knew or should have known that their collective
and individual actions violated the company's policies and rules, as well as PLAINTIFF
individual rights.

195.    As a result of INDIVIDUAL DEFENDANTS' actions, PLAINTIFF was extremely
humiliated, degraded, victimized, embarrassed, and emotionally distressed.

196.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss
of income, the loss of a salary/pay, benefits, special damages and other compensation,
which such employment entails, and PLAINTIFF has also suffered future pecuniary
losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-
pecuniary losses.

197.    DEFENDANTS GREGORY'S and CUSARE'S conduct was malicious, willful,

outrageous, and conducted with full knowledge of the law.

## AS A *NINTH* CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### *VICARIOUS EMPLOYER LIABILITY*
### *(Against Defendant IACRL)*

198. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

199. The New York City Administrative Code § 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        1. the employee or agent exercised managerial or supervisory responsibility; or

        2. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct here that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

        3. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

    c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

200. Defendant IACRL violated the section cited herein as set forth.

201. Defendants IACRL was aware and or should have been aware that Plaintiff was being

subjected to unlawful discrimination, retaliation and a hostile work environment by their DEFENDANT GREGORY, who was acting within the scope of his authority as a Human Resource Director for IACRL as outlined in this Complaint above.

202. DEFENDANT IACRL knew or should have known that PLAINTIFF complained about sexual harassment by DEFENDANT GREGORY.

203. DEFENDANT IACRL was made aware of PLAINTIFF'S complaints and concerns because she complained to Executive Director DEFENDANT CUSARE, about the hostile work environment and sexual harassment she faced.

204. DEFENDANT IACRL did nothing to assist PLAINTIFF and/or to investigate or abate the hostile work environment against PLAINTIFF.

205. Instead, DEFENDANT CUSARE allowed the hostile environment to continue and then wrongfully terminated PLAINTIFF (and her coworker witnesses) shortly after she complained about sexual harassment and the hostile work environment.

206. With notice of the actions of DEFENDANT GREGORY against PLAINTIFF, IACRL and its administration and ignored PLAINTIFF'S concerns, refused to investigate same, and allowed retaliatory adverse employment actions (including termination) to take place against PLAINTIFF and her coworker witnesses.

207. DEFENDANT IACRL are therefore vicariously liable for the sexual harassment, hostile environment and retaliation experienced by PLAINTIFF.

208. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary/pay, benefits, special damages and other compensation, which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## JURY DEMAND

209.    Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.    Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, the NYCHRL, and NYSHRL in that Defendants <u>discriminated against</u> Plaintiff on the basis of her sex/gender and <u>retaliated against</u> Plaintiff for complaining of sexual harassment.

B.    Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D.    Awarding Plaintiff punitive damages;

E.    Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
       October 6, 2017

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By:    _____/S/_____
       Gregory Calliste, Jr.
       *Attorneys for Plaintiff*
       45 Broadway, Suite 620
       New York, New York 10006
       (212) 248-7431